HOLTZER v. CONSOLIDATED ELECTRIC MANUF'G CO. et al.

(Circuit Court, D. Massachusetts. March 13, 1894.)

No. 2,923.

1. PATENTS—CONSTRUCTION OF CLAIMS—GALVANIC BATTERIES.
　　The first claim of the Holtzer patent for an improvement in galvanic batteries (No. 327,878) includes a "negative electrode, consisting of a carbon cup provided with a cover integral with it," etc. The specifications state that the "negative element and top or cover of the jar are formed of a single integral piece of molded material." Held, that the word "integral," as used in the claim, involves the idea of a cup and cover molded in one piece, and cannot be construed as relating to a whole composed of parts spacially distinct.

2. SAME—INVENTION.
　　The Holtzer patent No. 327,878, for a galvanic battery in which the negative electrode consists of a cup and cover molded in one piece, and having a central opening for the reception of the positive electrode, shows patentable invention in securing utility and durability through simplified methods.

This is a bill filed by Charles W. Holtzer against the Consolidated Electric Manufacturing Company and others for infringement of a patent for an improved construction of galvanic batteries.

Fish, Richardson & Storrow, for complainant.
Philip Mauro, for defendants.

ALDRICH, District Judge. The complainant seeks protection for an alleged invention covered by letters patent No. 327,878. The device or invention is supposed to produce an improved construction of galvanic batteries, sometimes called "agglomerate batteries" and sometimes called "open-circuit batteries." The complainant's battery, manufactured under the claims of such letters patent, is known in the United States and in foreign countries as the "Holtzer Cylinder Battery," and it is alleged that the defendants' battery adopts the substantial improvement resulting from the invention covered by such letters patent.

It is not understood that the complainant rests his case upon discovery of agencies employed to generate electricity, but upon improved methods calculated to make known agencies more practical and useful; that the invention is in the direction of simplicity

and durability, and that, by discarding many details of former batteries, a greater utility is produced.     And, to state the complainant's claim in the words of the expert:

"The improvement forming the subject of the invention of the Holtzer patent consists mainly in making the negative element in the form of an inverted cup composed of a single integral piece of molded carbon, the bottom of the cup constituting the top or cover of the battery jar or reservoir containing the battery elements and liquid.   The cover portion of the cup-shaped element is also formed with an external flange, which rests upon the mouth of the jar, and thus supports the carbon element in the jar while closing the mouth of the jar so as to prevent evaporation of the liquid.   The portion of the negative electrode forming the cover of the jar is provided with a central opening which contains a perforated bushing or stopper of insulating material, through the perforation of which the zinc or positive element of the battery passes so that the said zinc is properly supported in the battery liquid, and at the same time insulated from the negative element except as the said elements are connected through the external and internal circuit of the battery.   The cover of the cup-shaped negative element has secured to it, and in intimate electrical contact with it, a binding post or wire clamp constituting the positive pole of the battery to which the external circuit wire is connected."

It is also claimed among other things that:

"The advantages of the improved construction, in which the negative element and top or cover of the jar are formed of a single integral piece of molded material, instead of being made up of a number of parts, some of conducting and some of insulating material, mechanically fastened together, are simplicity of construction, and strength and durability, as there are no parts to become detached from one another, and greater electrical efficiency and durability, as there are no joints or contacts to become electrically separated or insulated from one another by the destructive action of the battery liquid."

The device on which the complainant principally relies is described as follows:

"I claim: (1) In an electric battery, the negative electrode, consisting of a carbon cup provided with a cover integral with it, the said cover having an opening for the reception of the positive electrode, and being extended over the edge of the jar to support the cup, substantially as described.   (2) An electric battery consisting of a glass jar, a cup and cover attached thereto, forming the negative electrode, and an insulating bushing or sleeve placed in the cover, and a positive electrode supported by the said insulating bushing or sleeve, substantially as described."

The defendants' theory is that, under reasonable construction of the claims, the idea of a cup and cover molded in one piece was not intended, and that the complainant's contention in evidence that the leading and substantial feature of his invention is simplicity resulting from the cup and cover molded in one piece of the same material is not warranted by the claims filed in the patent office; and it is urged in this direction that the word "integral," used in this connection, does not mean necessarily one piece, and may, with equal consistency, relate to a whole, composed of parts spacially distinct.   I cannot accept the defendants' view in this respect. Reading the claims in connection with the specification, it is apparent that the patentee's aim was in the direction of simplicity, and that he intended one piece molded of the same material, and that the word "integral" was used in that sense.   It will be observed

by reference to the third paragraph of patentee's specification that he says:

"In accordance with my invention, instead of the usual glass cover, the positive carbon rod, and the usual agglomerate plates or blocks fastened to it by rubber bands, and the lead cap attached to the positive carbon outside of the cover and serving to suspend the said carbon within the jar, I employ a negative electrode, composed of the usual so-called 'agglomerate' material, molded under pressure to form a cup, and a flange to support the cup when placed in position in the usual glass jar."

The construction for which the defendants contend doubtless might result from technical and astute reasoning, but such is not the rule for construing claims of this character. Manufacturing Co. v. Adams, 151 U. S. 139, 144, 14 Sup. Ct. 295. The word "integral" might be employed under circumstances and in a sense to denote what the defendants claim for it, but we do not think it was used in this connection to describe a cup and cover of several parts of the same or different material, but, on the contrary, to describe one piece molded in such shape as to perform the function previously involved in a complicated mechanical construction comprising a considerable number of parts of different materials and attachments.

The complainant's invention must be accepted as a valuable improvement upon the means previously employed in this class of batteries. The device provides for a mechanical construction comprising practical utility and durability through simplified methods, and by means more satisfactory than any previously employed or known. That this invention is a useful improvement seems apparent from an examination of the complainant's claims and exhibits, in comparison with the claims set forth in prior patents, and the batteries, formerly used, as described in the evidence presented by the record. If there were doubt on this question, we might well consider the fact that the complainant's idea of construction was readily adopted by the public generally, as well as by these defendants. Krementz v. S. Cottle Co., 148 U. S. 556, 560, 13 Sup. Ct. 719; Topliff v. Topliff, 145 U. S. 156, 164, 12 Sup. Ct. 825. It must, therefore, be found that the complainant's improvement involves patentable novelty, and that it was not anticipated by any form of construction previously known. Although the improvement is simple in its character, it is entitled to protection. Krementz v. S. Cottle Co., 148 U. S. 556, 560, 13 Sup. Ct. 719; The Barbed Wire Patent, 143 U. S. 275, 282, 12 Sup. Ct. 443, 450; Loom Co. v. Higgins, 105 U. S. 580, 591. Indeed, simplicity of construction is the leading characteristic of the Holtzer battery, and it is for the device which works this result that the complainant seeks protection.

The defendants' battery appropriates the essential idea of construction contemplated by the first and second claims of complainant's patent, and is an infringement thereof.

Let a decree be entered for an injunction and an accounting in accordance with the prayer.